IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HUNSINGER, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:21-CV-2846-BH |
| | § | |
| OFFER, LLC, and | § | |
| MICHAEL SCHUTZE, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is *Defendant's Motion to Dismiss Plaintiff's Amended Petition for Plaintiff's Failure to State a Claim and Memorandum in Support and Request to Declare Joe Hunsinger, a Vexatious Litigant*, filed June 14, 2022 (doc. 26). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED IN PART**, the plaintiff's claims should be **DISMISSED with prejudice**, and the motion to declare him a vexatious litigant and to sanction him should be **DENIED**. The motion for leave to amend the complaint included within the plaintiff's response (doc. 3) to the motion to dismiss is **GRANTED**.

## I. BACKGROUND

Joe Hunsinger (Plaintiff) sues Offer, LLC (Offer) and its managing member, Michael Schutze (Schutze), (Defendants) under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA), and Texas Business and Commerce Code § 305.053, for unauthorized calls to his cellular telephone. (doc. 25 at 1-2, 25-27.)[2]

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the

Plaintiff alleges that his cellular number was "primarily used for personal, family, and household use" and was on the National Do Not Call (DNC) Registry. (*Id.* at 18, 25.) Between October 7 and October 11, 2021, seven calls were made to that number without his consent by a caller identified as "Ashley" who "wanted to buy real property from" him, but she "did not identify the name of the business on who[se] behalf she was calling." (*Id.* at 11.) Plaintiff called back, followed the caller's cues, answered questions about his property, and provided his email address "to find out who was sending the unauthorized calls." (*Id.*)

On October 11, 2021, Ashley emailed Plaintiff an agreement to purchase real property (Purchase Agreement). (*Id.*) The email, sent from "info@offerbuyers.com," stated: "Please find the attached Purchase Agreement and feel free to call or text me for any clarifications." (*Id.* at 11, 24.) The Purchase Agreement identified "Offer, LLC" as the buyer. (*Id.*) Plaintiff replied by email on the same day, stating that his "phone number is registered on the DNC Registry" and requesting that his telephone number be removed from Offer's calling list and a copy of its DNC policy be sent to him. (*Id.* at 12.) Defendant did not send him its DNC policy, however. (*Id.*) Later that day, Ashley called Plaintiff two more times. (*Id.* at 12-13.) Plaintiff answered and told Ashley his number was on the DNC Registry and to take his number off the calling list. (*Id.* at 13-14.)

On November 15, 2021, Plaintiff filed this suit, alleging that Defendants' unauthorized calls to his cellular number, which was on the DNC Registry, and failure to provide a DNC policy upon request, violated the TCPA, 47 C.F.R. §§ 64.1200, and Texas Business and Commerce Code § 305.053. (doc. 3; doc. 25 at 11-25.) He seeks statutory damages of $500 for each call and TCPA

---

page numbers at the bottom of each filing.

regulation violation, treble statutory damages under the TCPA and Texas Business and Commerce Code because the violations were intentional or knowing, and injunctive relief. (*Id.* at 25-27.) He also alleges that Defendants' misconduct constitutes an intrusion on his "solitude, seclusion, and private affairs," and he seeks to recover "punitive and actual damages, including his damages for mental anguish." (*Id.* at 27-28.)

On June 14, 2022, Defendants jointly moved to dismiss this action and to have Plaintiff declared a vexatious litigant and sanctioned. (doc. 26 at 1.) Plaintiff responded on July 5, 2022, and Defendants replied on July 14, 2022. (docs. 29; 30.)

## II.  MOTION TO DISMISS

Defendants move to dismiss Plaintiff's claims under 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (doc. 26 at 1.)

### A.    <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196; *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (all well-pleaded facts must be taken as true, and all reasonable inferences must be drawn in the nonmoving party's favor).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

3

of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499

4

(quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f ... matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Plaintiff attached to his amended complaint an email confirming his phone number's registration on the DNC Registry, a screenshot of his phone call log showing calls to and from Defendant, a copy of the email exchange between him and Ashley enclosing the Purchase Agreement and the Purchase Agreement itself, and a copy of Offer's "Certificate of Formation Limited Liability Company" (Certificate of Formation) filed with the Secretary of State of Texas, identifying Schutze as the Managing Member. (doc. 25 at 29-51.) These documents are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. In response to Defendants' motion to dismiss, he also submitted an affidavit that reasserts and clarifies some of his factual allegations in his complaint. (*See* doc. 30.)[3] Because his *pro se* filing is properly

---

[3] Although the affidavit references attached exhibits, none are included or attached. (*See* doc. 30.)

construed as a motion for leave to amend and **GRANTED**,[4] his affidavit is also considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. It is therefore unnecessary to treat Defendants' motion to dismiss as a summary judgment motion.

**B.    TCPA**

In 1991, Congress passed the TCPA in response to "a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). It imposes restrictions on the use of automated telephone equipment and artificial or prerecorded voice messages and directs the Federal Communications Commission (FCC) to implement regulations to enforce its provisions. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012).

*1.    Artificial or Pre-Recorded Voice*

Defendants argue that Plaintiff's TCPA claims should be dismissed because the calls to him were made by a person; they were not made using an "artificial or prerecorded voice" or dialed using an "Automated Telephone Dialing System" (ATDS). (doc. 26 at 5-7.)

---

[4] Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat'l Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, in this circuit, courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged claim should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) ("The district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). Plaintiff's sworn affidavit and allegations in his response to Defendant's motion to dismiss are therefore construed as a motion to amend, it is granted, and any new allegations are considered.

6

The TCPA and FCC's implementing regulations prohibit, in relevant part, any person or entity from using an ATDS or an artificial or prerecorded voice to make a call, other than for emergency purposes or with the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A), (B); 47 C.F.R. § 64.1200(a)(1)-(3). An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Here, Plaintiff's complaint does briefly mention Defendants' use of an ADTS in the background section, but it does not reference an ADTS or artificial or prerecorded voice in the list of "Questions of Law" or in any of the listed TCPA counts (Counts 1-5). (*See* doc. 25 at 4, 8-10, 25-26.) The listed TCPA counts are expressly based on § 227(c) and § 64.1200(c) and (d) and do not mention § 227(b) and § 64.1200(a). In the introduction, Plaintiff's response to Defendants' motion to dismiss notes that § 227(b)(1) "makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice without the call recipient's prior express consent." (doc. 29 at 6-7.) It does not, however, present any argument or claim under this statute or its implementing regulations, again mention the use of an artificial or prerecorded voice, or mention ADTS. (*See id*. at 7-22.) It only reiterates his claims under § 227(c) and § 64.1200(c) and (d). (*See id*. at 5, 7-22.) Because Plaintiff does not assert a claim based on the alleged use of an ADTS or an artificial or prerecorded voice under § 227(b) and § 64.1200(a), Defendants' motion to dismiss the complaint on this basis should be denied.

### 2. *Telemarketing*

Defendants also move to dismiss Plaintiff's TCPA claims under § 227(c) and § 64.1200(c) and (d) because the calls were not made for "telemarketing purposes." (doc. 26 at 7-8.) They note

7

that his complaint alleges only that Ashley inquired into purchasing his real property, not that she solicited him to purchase anything, and that "[c]alls made to purchase something from the Plaintiff (as opposed to selling something to the Plaintiff) are expressly not included in the statute." (*Id.*)

Plaintiff specifically sues under § 227(c)(5), which grants a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." Section 64.1200(c)(2), which he cites, prohibits any person or entity from initiating any *telephone solicitation* to a residential telephone subscriber whose telephone number is on the DNC Registry. 47 C.F.R. § 64.1200(c)(2) (*emphasis added*). Section 64.1200(d) requires, in relevant part, that entities making calls for *telemarketing purposes* have "a written policy, available upon demand, for maintaining a do-not-call list," and that "any call for *telemarketing purposes* must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. §§ 64.1200(d)(1), (4) (*emphasis added*).[5] "No private right of action accrues and a telemarketer is not in violation of [Section 227(c)] unless and until it telephones a party more than once in a twelve-month period after the person has informed the telemarketer that he or she does not want to be called." *Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *4 (S.D. Tex. Apr. 24, 2019) (quoting *Charvat v. ATW, Inc.*, 712 N.E.2d 805, 807 (Ohio App. 1998)).

The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message

---

[5] Both §§ 64.1200(c) and (d) also apply to wireless telephone numbers. *See* 47 C.F.R. § 64.1200(e).

for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 277(a)(4).[6]  Likewise, § 64.1200(f)(13) defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). Neither the United States Supreme Court nor the United States Court of Appeals for the Fifth Circuit appear to have specifically addressed whether these definitions include calls or messages made for the purpose of offering to purchase something from the recipient of the call or message.

District courts which have considered this issue have generally found that the terms "telephone solicitation" and "telemarketing" do not encompass calls for the purpose of offering to purchase something from the recipient, as long as they do not also encourage the recipient to purchase, rent, or invest in the caller's property, goods, or services. *See Jance v. Homerun Offer LLC*, No. CV-20-482, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (finding that neither the definition of "telephone solicitation" in § 227(c) nor the definition of "telemarketing" in § 64.1200(f)(13) "encompasses a scenario in which the caller offers to buy something from the recipient of the call") (citing *Knutson v. Blue Light Security, Inc.*, No. 17cv134-LAB (JMA), 2018 WL 1172611, at *4 (S.D. Cal. Mar. 5, 2018)(noting that neither the term "advertisement" in § 64.1200(f)(1)[7] nor the definition of "telemarketing" in § 64.1200(f)(13) included offers to buy

---

[6] Section 64.1200(f)(14) also defines the term **Error! Main Document Only.**"telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(14).

[7] "**Error! Main Document Only.**The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." § 64.1200(f)(1).

9

something (information) from the recipient of the call and rejecting the argument that any call made by a telemarketer constituted telemarketing)); *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *1, 8 (S.D. Cal. July 8, 2021) (finding that communications targeted at procuring services from the plaintiff did not fall within the definition of telemarketing and were not telephone solicitations under the TCPA), *reconsideration granted on other grounds*, 2021 WL 4804464 (S.D. Cal. Oct. 14, 2021); *Mittelmark v. Yoga Joint South, LLC*, No. 18-62138-CIV-DIMITROULEAS, 2018 WL 11460013, at *3 (S.D. Fla. Dec. 14, 2018) (stating that "[m]erely offering to purchase something from the text message recipient[8] does not constitute telemarketing"); *Murphy v. DCI Biologicals Orlando*, *LLC*, No. 6:12-cv-1459, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015) (finding that messages to the plaintiff asking him to sell his blood did not constitute "telephone solicitations" under the TPCA because he was not encouraged "to purchase, rent, or invest in anything").[9]

Just as in this case, the plaintiff in *Jance* alleged that the purpose of the defendant's calls to him was to seek to purchase his home; he did not allege that the purpose was to induce him to make a purchase from the defendant. 2021 WL 3270318, at *4. The court found that because the

---

[8] A text message sent to a cellular phone "qualifies as a 'call'" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

[9] *Compare* **Error! Main Document Only.**Anderson v. Catalina Structured Funding, Inc.*, No. 1:21-cv-197, 2021 WL 8315006, at *5-6 (W.D. Mich. Dec. 21, 2021) (finding that calls offering to purchase the plaintiff's structured settlement qualified as a telephone solicitation under the TCPA because the defendant was also offering the service of turning a long-term income stream into immediate cash) (citing *Buja v. Novation Capital, LLC*, No. 15-81002, 2017 WL 10398957, *7 (S.D. Fla. Mar. 31, 2017) (finding that calls offering to purchase structured settlements were initiated to encourage the purchase of services provided by structured settlement purchasers)); **Error! Main Document Only.**Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012) (noting that the FCC has found that "dual purpose" calls which include both a customer service or informational component as well as a marketing component are generally prohibited under the TCPA) **Error! Main Document Only.**(quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order ("Regs. TCPA 1991"), 18 FCC Rcd. 14014, 14098 ¶ 141 (July 3, 2003)).

TCPA "clearly" defined the terms "solicitation" and "telemarketing", and neither included offers to purchase, the plaintiff had failed to state a claim under § 227(c). *Id.* Similarly, the court in *Gross* found that the defendant real estate firm's text messages to the plaintiff's cell phone asking if he knew of any "off-market deals or pocket listing[s] not yet on MLS" were targeted at procuring services from him and therefore did not constitute telephone solicitations under the TCPA, and it dismissed his § 227(c) claims. 2021 WL 2863623, at *8.

In a related context, this court has previously considered whether calls that were not made for the purpose of selling or renting any service or product to the plaintiff, or soliciting an investment from him, were made for purposes of telemarketing. *See Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at *3 (N.D. Tex. July 21, 2020) (Godbey, J.). In *Schulz*, the plaintiff argued that the defendant had made calls to him for purposes of gathering "valuable business information" from businesses like his in exchange for "an updated business listing" to be provided to other entities for a profit, and that because there was a "mutually beneficial exchange", the calls were made for a telemarketing purpose. *Id.* at 2-3. This court found that the text of § 64.1200(f)(12), which defines "telemarketer" using language identical to that in § 227(c) and § 64.1200(f)(13), did not support the plaintiff's argument because it "expressly covers *only encouragements to purchase, rent, or invest*." *Id.* at 3 (*emphasis added*).[10] It specifically recognized that even if there was no express mention of a product, service or offer of a free benefit, a TCPA violation might still exist if the context of the communication showed an underlying

---

[10] The term "telemarketer" is defined as "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

telemarketing purpose. *Id.* at 2. Because nothing in the complaint suggested that the defendant ultimately sought to sell or rent any service or product to the plaintiff, or to solicit an investment from him, however, this court found that neither the content of the calls nor any alleged context plausibly suggested that the calls were made with a telemarketing purpose. *Id.* at 3. Accordingly, it granted the defendant's motion to dismiss the plaintiff's TCPA claim. *Id.*

Here, Plaintiff does not allege that Defendants sought to sell or rent any service or product to him, or to solicit an investment from him; he only alleges that the calls were made to convey offers to purchase his property. Neither the alleged content of the calls nor any alleged context plausibly suggest that the calls were made with a telemarketing purpose. His argument that the offer to buy his property constituted a solicitation under the TCPA has been specifically considered and rejected by another court. *See Orea v. Nielsen Audio, Inc.*, No. 14-cv-04235, 2015 WL 1885936, at *2-3 (N.D. Cal. Apr. 24, 2015)(rejecting the plaintiff's claim that the defendant's calls made with the intent to buy something from him were solicitations under the TCPA because "[t]the only sensible reading of the statute is that the 'purchase' of 'property,' 'goods,' or 'services' that is intended by the call is the purchase by the consumer, not by the caller. Any other reading would include absurd results by sweeping into a consumer protection statute prohibitions against a range of ordinary social interactions."). Based on this court's prior holding in *Schulz*, Plaintiff has failed to state a plausible claim for relief under § 227(c) or § 64.1200(c) or (d), and his TCPA claims against Defendants should be dismissed.

## C.    Texas Business and Commerce Code § 305.053

Defendants move to dismiss Plaintiff's claims under § 305.053 of the Texas Business and Commerce Code for the same reasons as his TCPA claims. (*See* doc. 26 at 7-9.)

12

Section 305.053(a) of the Texas Business and Commerce Code provides that "[a] person who receives a communication that violates [the TCPA], a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053. "The elements of a § 305.053 claim 'correspond to the necessary elements for a TCPA claim.'" *Hunsinger v. 206S6TH LLC*, 3:21-CV-2847-G-BH, 2022 WL 1110354 (N.D. Tex. Mar. 23, 2022) (TCPA), *rec. adopted*, 2022 WL 1102864 (Apr. 13, 2022) (quoting *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021)). "'By establishing a violation under 47 U.S.C. § 227, a party has also established a violation under the related statute in the Texas Business and Commerce Code.'" *Id.* (quoting *Cunningham v. Arco Media Inc.*, No. 4:19-CV-00901-RWS-CAN, 2020 WL 2310021, at *3 (E.D. Tex. Apr. 3, 2020), *adopted by* 2020 WL 2306589 (E.D. Tex. May 8, 2020) (citations omitted)).

As discussed, Plaintiff has failed to state a plausible TCPA claim against Defendants, so he has also failed to state a plausible claim against them under § 305.053. Defendants' motion to dismiss this claim should also be granted.

**D.    <u>Injunctive Relief</u>**

Defendants also move to dismiss Plaintiff's request in Count 7 under § 227(b)(3)(A) and Tex. Bus. & Com. Code § 305.053 for injunctive relief against further violations of the TCPA. (*See* doc. 26 at 9-10.)

"To obtain injunctive relief, a plaintiff is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v.*

13

*DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Because Plaintiff's substantive claims are subject to dismissal on the merits, he cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. His request for injunctive relief should also be dismissed.

**E.    Invasion of Privacy**

Construing Count 8 solely as a request for actual and punitive damages, Defendants move to dismiss it for failure to state a claim. (*See* doc. 26 at 10.)  Count 8 appears to assert a common law claim for invasion of privacy by intrusion upon seclusion; it alleges that Defendants "intentionally intruded on [his] solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to [Plaintiff's] cellular phone." (doc. 25 at 27.)

Texas law recognizes multiple forms of invasion of privacy, each with separate elements. *Crain v. Hearst Corp.*, 878 S.W.2d 577, 579-80 (Tex. 1994). There are "three distinct injuries under the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness." *James v. Dallas Police Dep't*, No. 3:12-CV-457-N-BN, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013), *adopted by* 2013 WL 607153 (N.D. Tex. Feb. 19, 2013) (citing *id.* at 578). The elements of an intrusion upon seclusion claim are: "(1) an intentional intrusion upon a person's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person, and (3) as a result of which the person suffered an injury." *Baugh v. Fleming*, No. 03-08-00321-CV, 2009 WL 5149928, at *1 (Tex. App.— Austin 2009, no pet.). "Usually an action for intrusion upon one's seclusion is found only when there has been a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Graham v. JPMorgan Case Bank, Nat'l Ass'n*, No. 4:13-CV-1410, 2015 WL 4431199, at *12 (S.D. Tex. July 15, 2015) (quotations omitted)

14

(quoting *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989)). "To be actionable, the intrusion must be highly offensive meaning that it must be unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

Plaintiff's complaint generally alleges that "Defendant intentionally intruded on [his] solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to his cellular phone", and that this "intrusion would be highly offensive to a reasonable person." (doc. 25 at 27-28.)  His conclusory statements are not sufficient to demonstrate that Defendants intentionally intruded upon his privacy in such a way that would be highly offensive to a reasonable person, however. *See Hunsinger*, 2022 WL 1110354, at * 6 (finding that identical language by Plaintiff, without more, was insufficient to state a plausible claim for invasion of privacy); *see also Cherkaoui*, 32 F. Supp. 3d at 816 (explaining that "mere feelings about what an alleged mental anguish injury is cannot support any recovery"); *Cunningham v. Prof'l Educ. Inst., Inc.*, No. 4:17-CV-894, 2018 WL 6709515, at *6 (E.D. Tex. Nov. 5, 2018), *adopted by* 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018) (finding allegations of unwanted robocalls and invocation of "right to be left alone" insufficient for pleading an intrusion on seclusion claim).  Defendants' motion to dismiss this claim should also be granted.

## IV. VEXATIOUS LITIGANT

Noting that he has filed more than fifty lawsuits in this district, Defendants additionally move to have Plaintiff declared a vexatious litigant, enjoined from future filings without prior leave, and sanctioned "monetarily to pay for Defendants' reasonable and necessary attorney's fees and expenses." (doc. 26 at 10-12.)

Because Defendants do not specifically cite the legal basis for their request, their citation to *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986), is construed as invoking the Court's inherent power.  (*See id*.)  Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam) (citing *Roadway Express, Inc., v. Piper*, 447 U.S. 752, 764 (1980)). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* (citing *Roadway Express, Inc.*, 447 U.S. at 766; *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). While courts "exercise caution" in invoking their inherent powers and should "ordinarily" instead rely on a rule or statute to levy sanctions, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991), they may impose appropriate sanctions under their inherent powers upon a finding of bad faith when sanctions under a rule or statute is unavailable, *see Elliott v. Tilton,* 64 F.3d 213, 216–17 (5th Cir.1995).

Courts have the duty to impose the least severe sanction that is sufficient to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993). Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *See* Fed. R. Civ. P. 11; *Lynaugh*, 989 F.2d at 195–97. *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson,* 808 F.2d at 359. A court may impose a prefiling sanction on a vexatious litigant, after weighing all relevant circumstances, including the following factors:

(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on

16

the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

As for attorney's fees, courts have the inherent power to deviate from the "American Rule"[11] to award attorneys' fees for, among other things, parties acting in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers*, 501 U.S. at 45–46 (internal quotations omitted) (recognizing court's inherent power to assess attorneys' fees when party acted in bad faith). "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001). "Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution. The threshold for the use of the inherent power [to impose] sanction[s] is high." *Id.* (internal quotations omitted).

As noted by Defendants, Plaintiff has filed more than fifty cases in the Northern District of Texas over the last ten years, and more than forty of those were filed within the last eighteen months. In addition to the TCPA and Texas Business and Commerce Code, as alleged in this case, his fee-paid lawsuits also allege violations of the Fair Debt Collections Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), and their state counterparts. *See, e.g., Hunsinger*, 2022 WL 1110354 (TCPA); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL

---

[11] The general rule in the United States is that "in the absence of legislation providing otherwise, litigants must pay their own attorneys' fees." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978).

562761, at *1 (N.D. Tex. Feb. 24, 2022)(TCPA); *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2014 WL 1462443 (N.D. Tex. Apr. 15, 2014) (FDCPA, FCRA, Texas Debt Collection Practices Act, and Texas Deceptive Trade Practices Act). Although some cases have been dismissed based on the defendants' dispositive motions, others have been resolved by offer of judgment, voluntary dismissal, default judgment, summary judgment, and settlement. *See Hunsinger,* No. 3:21-CV-1598-D (N.D. Tex. June 6, 2022) (offer of judgment), doc. 41; *Hunsinger*, 2022 WL 1110354 (default judgment); *Hunsinger v. Andersons Gold & Silver Exch., LLC*, No. 3:20-CV-2043-B-BH, 2021 WL 2384698, at *1 (N.D. Tex. May 21, 2021) (voluntary dismissal), *rec. adopted*, 2021 WL 23772979 (N.D. Tex. June 10, 2021).

Although Plaintiff has filed numerous lawsuits in this district, none of his other lawsuits were filed against Defendants. Defendants have not shown that he has a history of filing vexatious, harassing or duplicative lawsuits, or that he lacked a good faith basis for bringing any action, including this one. *Compare Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 219 (N.D. Tex. 2020) (finding sanctions appropriate because the lawsuit was the plaintiff's sixth challenge to the foreclosure proceedings against his property); *Schum v. Fortress Valley Recover Fund I LLC*, No. 3:19-CV-00978-M, 2019 WL 7856719, at *5 (N.D. Tex. Dec. 2, 2019) (imposing a prefiling injunction after "extensive and unsuccessful history of vexatious and duplicative litigations over the last 16 years to challenge the RRI and Watch bankruptcy proceedings"); *Budri v. FirstFleet Inc.*, No. 3:21-CV-1872-L-BT, 2021 WL 6496786, at *5 (N.D. Tex. Oct. 22, 2021) (finding that because "his prior lawsuits have all been dismissed by opinions that leave no doubt as to the specific deficiencies in his claims" against his prior employer, the court could not find that the plaintiff had a good faith basis for his latest action against it). Other than claiming

18

harassment, Defendants have not presented any evidence or argument demonstrating the extent of the burden on the courts and other parties.  In addition, Plaintiff has not ignored court orders or refused to meaningfully respond to dispositive motions, and he appears to have made good faith attempts to plead and prove all aspects of his case. *See Ewing v. Rushmore Loan Mgmt. Servs.*, No. 3:16-CV-3022-G-BK, 2018 WL 1384468, at \*5 (N.D. Tex. Feb. 23, 2018) (imposing sanction for bad faith conduct on a plaintiff that repeatedly ignored court orders and refused to meaningfully respond, if at all, to dispositive motions).

Defendants have not presented a sufficient basis for finding that Plaintiff has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons" in bringing this action, so it would be inappropriate to impose sanctions. *Chambers*, 501 U.S. 32 at 45–46; *Toon*, 250 F.3d at 952. In addition, because he has never received a warning or shown a pattern of ignoring court orders and judgments, imposing a prefiling sanction here would be too severe. *See Tyler v. PHH Mortg. Corp.*, No. 3:19-CV-03007-C-BT, 2020 WL 5520609, at \*7 (N.D. Tex. Sept. 4, 2020) (declaring the plaintiff a vexatious litigant but declining to impose any sanction harsher than a warning because plaintiff had not previously been warned by the court).  The balance of the relevant circumstances and factors weighs against the imposition of a prefiling injunction or sanctions against Plaintiff by requiring him to pay Defendants' reasonable attorney's fees and expenses. Defendants' motion should be denied.

## V. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Courts therefore typically allow *pro se*

19

plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Thomas v. Texas*, No. 3:17-CV-0348-N-BH, 2017 WL 11496979, at *2 (N.D. Tex. May 19, 2017). A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See id.* Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez*, 66 F.3d at 97. Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has already amended his complaint and responded to Defendants' motion to dismiss with an affidavit.  It appears that he has already stated his best case, and no further opportunity to amend is warranted.

## V. RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED IN PART**, all of Plaintiff's claims against them should be **DISMISSED with prejudice,** and the request to declare Plaintiff a vexatious litigant and sanction him should be **DENIED**.

**SO RECOMMENDED** on this 7th day of December, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

20

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

     A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE